﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 191015-39014
DATE: May 29, 2020

ORDER

Entitlement to service connection for hiatal hernia (claimed as stomach condition) is denied.

Entitlement to service connection for persistent depressive disorder with anxious distress, moderate is denied.

Entitlement to an evaluation in excess of 10 percent for right foot, plantar and retrocalcaneal spurs (previously rated as right foot, first and second metatarsal fractures/forefoot fractures), hereafter right foot disability, is denied.

FINDINGS OF FACT

1. The Veteran’s hiatal hernia was not incurred in active service or caused by his active service.

2. The Veteran’s psychiatric disorder, including persistent depressive disorder, did not begin in active service and is not related to active service.

3. The Veteran’s right foot disability most closely approximates a moderate foot injury; the Veteran’s right foot disability has not approximated a moderately severe or severe foot injury.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for hiatal hernia have not been met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.317.

2. The criteria for service connection for an acquired psychiatric disorder, to include persistent depressive disorder, have not all been met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.

3. The criteria for an evaluation in excess of 10 percent for a right foot disability have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, DC 5284.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1979 to July 1986, he had additional service in the Army Reserves after 1986.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from an August 2019 rating decision issued by a Department of Veterans Affairs (VA) Regional Office (RO).

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1131 (2012); 38 C.F.R. § 3.303 (a) (2018). “To establish a right to compensation for a present disability, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service”- the so-called “nexus” requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

1. Entitlement to service connection for hiatal hernia

The Veteran contends that his hiatal hernia is causally related to his active duty service.

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a current diagnosis of hiatal hernia, the preponderance of the evidence is against finding that it began during active service, or is otherwise related to an in-service injury, event, or disease.

VA did not obtain a medical nexus opinion on this issue. VA must provide a medical examination and medical opinion when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran’s service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the VA to make a decision on the claim. See McLendon, 20 Vet. App. 79, 81-82. Treatment records from the Orlando VA Medical Center from November 2012 through April 2019 show treatment and assessment for a hiatal hernia, decades after the Veteran’s separation from active service. This is insufficient to warrant the need to provide a medical examination. In this case, there is no corroborating evidence beyond the Veteran’s claim itself suggesting a relevant in-service disease or injury. The evidence does not establish a relevant event, disease or injury in service. As such, an opinion is not necessary.

For the reasons stated above, the Board finds that the preponderance of evidence is against the Veteran’s claim of entitlement to service connection for hiatal hernia and his appeal must be denied. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49.

2. Entitlement to service connection for persistent depressive disorder

The Veteran maintains that he suffers from persistent depressive disorder as a result of his active duty service.

The Board finds that service connection is not warranted for a psychiatric disability because no current acquired psychiatric disorder was present during a period of active duty, and no such disorder is etiologically related to a period of active duty.

A private DBQ examination in March 2019 indicated that the Veteran’s has a current diagnosis of peristent depressive disorder. As such, the first requirement for establishing a claim of service connection is met.

Concerning the second element of service connection, the Veteran’s STRs are negative for any complaints or clinical findings of a psychiatric disorder. In his May 1986 Report of Medical History, for the purpose of separation from active duty, the Veteran checked boxes indicating that he had never had nervous trouble of any sort or depression or excessive worry. He indicated the same in a March 1990 Report of Medical History while in the Reserves. This is evidence against a finding that he had a psychiatric disease or symptoms of a psychiatric disease during active service or for years after separation from active service.

The earliest evidence of any diagnosis of an acquired psychiatric disorder is contained in the March 2019 private DBQ, at which time the Veteran was diagnosed with persistent depressive disorder, more than 30 years after he separated from active service. The Court has determined that a significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim. See generally Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000).

The March 2019 private DBQ contains an opinion that suggests a link between the Veteran’s currently diagnosed peristent depressive disorder and racial discrimination that the Veteran contends he experienced during his active service. The private psychologist stated that the Veteran reported several incidents of racial discrimination stemming from his superior officers while in the military. The private psychologist stated that such experiences appear to have prompted a chronic suspiciousness of others and overall distrust regarding others’ intentions. Such persistent paranoia and suspiciousness undoubtedly impact Veteran’s mental health and likely exacerbates his physical symptoms. 

Outside of the Veteran’s allegations, the record does not reflect evidence that he suffered any particular discrimination during service. Notably, the Veteran contends that he did not reenlist due to the claimed discrimination, but the record shows that he did remain in the reserves, which is somewhat inconsistent with his allegations. Additionally, the Veteran filed an earlier claim with no mention of psychiatric problems due to discrimination. The Board finds that this weighs against a finding of sufficient evidence of the alleged in-service injury or disease. As such, the Board concludes that the evidence does not establish a relevant inservice event, injury or disease and VA has no duty to provide a medical examination in this case. See McLendon, 20 Vet. App. 79, 81-82.

Notably, the March 2019 private psychologist also related the Veteran’s depressive disorder to his back and nerve pain. As these are not subject to service connection, they are not to be considered as a basis for secondary service connection.

Although lay persons are competent to provide opinions on some medical issues, the diagnosis and etiology of a psychiatric disorder, including persistent depressive disorder, is complex and falls outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau, 492 F.3d at 1377. Therefore, the Veteran is not considered competent (meaning medically qualified) to address the etiology of his psychiatric disorder.

In summary, although the evidence shows that the Veteran had a diagnosis of a psychiatric disorder during the claim and appeal, namely persistent depressive disorder, there is no competent and credible evidence of a psychiatric disorder during the Veteran’s period of service, no credible evidence that the claimed in-service events occurred during service, and no competent evidence suggesting that any current psychiatric disorder is related to the Veteran’s period of military service. For these reasons, the Board must deny the appeal as to entitlement to service connection for a psychiatric disorder, namely persistent depressive disorder. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C. § 5107 (b) (2012); 38 C.F.R. § 3.102 (2018); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Rating

Disability evaluations are determined by applying the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321, 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran’s disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21.

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as “staging the ratings.” See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008).

3. Entitlement to an evaluation in excess of 10 percent for right foot disability

In the August 2019 rating decision, the RO increased the Veteran’s evaluation for his service-connected right foot disability to 10 percent disabling pursuant to Diagnostic Code (DC) 5284. The Veteran contends that he is entitled to a rating in excess of 10 percent. 

The Veteran’s right foot disability, specifically plantar and retrocalcaneal spurs (previously rated as right foot, first and second metatarsal fractures/forefoot fractures), is not a disability that is specifically listed in the VA’s Schedule for Rating Disabilities. However, VA has up to this point found that the Veteran’s right foot disability is most analogous to a foot injury disability under DC 5284.

DC 5284 concerns foot injuries. DC 5284 provides a 10 percent evaluation for moderate impairment of the foot, a 20 percent rating for moderately severe impairment, and a 30 percent rating for severe impairment. 38 C.F.R. § 4.71a. The Note to DC 5284 indicates that a maximum 40 percent rating will be assigned for actual loss of use of the foot. 38 C.F.R. § 4.71a, DC 5284 and Note.

The Board acknowledges that the terms “moderate”, “moderately severe”, and “severe” are not defined under VA law and appear to have no commonly accepted medical definition. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. Use of terminology such as “severe” by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue.

At the June 2019 VA examination, the Veteran was found to have right foot, first and second metatarsal fractures/forefoot fractures. He reported that his current symptoms include burning sensation, numbness on the top of his foot, swelling and sharp pain. He stated that some days the pain is worse than the others, but he just works through it. The examiner stated that the Veteran does have functional loss reported by the Veteran to affect walking, standing for long periods, climbing stairs, loss of sleep, and exercise. The VA examiner determined that the Veteran’s right foot disability was overall considered moderate in nature.

Based on the above, under DC 5284, the Veteran’s right foot disability is most analogous to a moderate foot injury. Thus, he is entitled to an evaluation of 10 percent under DC 5284. A disability rating in excess of 10 percent under DC 5284 is not warranted because the Veteran has not exhibited symptoms of a moderately severe or severe foot injury, as would be required for a higher rating. 38 C.F.R. § 4.71a, DC 5284.

The Board has considered whether the Veteran is entitled to a higher disability rating under alternative diagnostic codes applying to the feet. Specifically, the Veteran’s representative raised the issue of a rating regarding pes planus, as he contends the Veteran was diagnosed with pes planus at his November 2012 VA examination.

At the November 2012 VA examination, the VA examiner checked the box that the Veteran had either now or had ever previously had a diagnosis of flatfoot/pes planus. However, the examiner further detailed that the Veteran did not currently have a diagnosis of pes planus, and that his foot pain was related to his radiculopathy of his back, and not from his arches. Thus, service connection has not been established for flat foot (pes planus). Therefore, the Board cannot assign the Veteran a disability rating under DC 5276. A higher rating is not applicable under DC 5278, as the Veteran does not have claw foot. A higher rating is also not applicable under DC 5283, as the Veteran does not have malunion or nonunion of the bone of the foot.

Considering all the evidence as described above, the Board finds that that the Veteran’s right foot disability has exhibited symptoms of a moderate foot injury. As such, the Veteran’s right foot disability mostly closely approximates the criteria for the currently assigned 10 percent disability rating under DC 5284. 38 C.F.R. § 4.71a.

The Board acknowledges the Veteran’s assertion that right foot disability warrants a higher disability rating. However, the Board finds the examination reports more probative than the Veterans assertions in this regard because they were conducted by medical professionals necessarily more familiar with foot disabilities.

The Board finds the opinion of the June 2019 VA examiner to be most probative evidence of record concerning whether the Veteran’s current right foot disability is severe enough or have worsened enough to warrant a higher disability rating. The June 2019 VA examiner’s opinion was based on consideration of the Veteran’s claims file, reported history, and medical records. Thus, the Board is satisfied that the June 2019 VA examiner’s opinion is competent, credible, persuasive, and probative for deciding this appeal.

Based on the above, the preponderance of the evidence is against the assignment of a rating in excess of 10 percent for the Veteran’s right foot disability. Therefore, the Veteran’s claim of entitlement to an evaluation in excess of 10 percent for a right foot disability must be denied.

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claims, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

 

JAMES G. REINHART

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Katie Poe, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.